<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHAROB ABDUL-AZIZ, | : |
| Plaintiffs, | : Civil Action No. 20-10265-SDW-AME |
| v. | : OPINION and ORDER |
| MARCUS O. HICKS, et al., | : |
| Defendants. | : |

**THIS MATTER** is before the Court on the motion of *pro se* Plaintiff Sharob Abdul-Aziz ("Plaintiff") for leave to amend and supplement the complaint pursuant to Rule 15.[1] [D.E. 63]. Defendants oppose the motion. [D.E. 67, 68]. The Court has reviewed the motion papers and finds oral argument unnecessary. *See* Fed. R. Civ. P. 78(b). For the following reasons, the motion is granted in part and denied in part.

**I.    RELEVANT BACKGROUND**

On August 10, 2020, Plaintiff, a convicted state prisoner, filed a complaint asserting civil rights claims against prison officials for injuries he allegedly sustained while riding in a prison transport van. [D.E. 1]. Plaintiff alleges prison officials classified him as requiring transport to a hospital for surgery in what he describes as a "wheelchair van" due to his medical conditions. [*Id.* at 6]. He asserts that, for certain related trips, prison officials transported him in what he describes as a "dog kennel van," despite three John Doe Defendants—*i.e.*, two transporting officers and an unnamed supervisor—knowing he was to be

---
[1] Unless otherwise stated, the "Rules" shall refer to the Federal Rules of Civil Procedure.

transported in a "wheelchair van." [*Id.* at 7]. During one of those "dog kennel van" rides, the transport was involved in an accident, which resulted in injuries to Plaintiff. [*Id.*].

On September 15, 2020, the District Court screened the complaint, permitted the deliberate indifference claims to proceed against the three John Doe Defendants, and dismissed the remaining claims without prejudice. [D.E. 4]. Specifically, the Court dismissed Plaintiff's Rehabilitation Act ("RA") claims as improperly raised against individuals in their individual capacity. [*Id.* ¶ 8 (holding that Plaintiff failed to plead a proper defendant—*i.e.*, a state entity—for liability under the RA)]. The Court also dismissed the deliberate indifference claims against Defendants Hicks, Kastanis, and Lynch for failure to plead a proper connection to the claims. [*Id.* ¶¶ 10-11 (holding that these officials cannot be held liable based on a vicarious theory of liability because Plaintiff's injuries cannot be traced to the prison's policies)].

On October 5, 2020, Plaintiff filed a first amended complaint, which included new factual allegations and re-asserted the previously dismissed claims.[2] [D.E. 7]. On January 25, 2021, the District Court screened the first amended complaint, permitted the deliberate indifference claims to proceed against Defendant Lynch and the John Doe Defendants, and dismissed the remaining claims without prejudice. [D.E. 8]. The Court dismissed the deliberate indifference claims against Defendants Hicks and Kastanis for the same reasons stated in the September 15 Order. [*Id.* ¶ 10]. It also dismissed the RA claims asserted against Defendants Hicks in his official capacity for monetary damages on state immunity grounds. [*Id.* ¶ 7 (stating that such claim is only viable for purposes of obtaining prospective injunctive relief)]. With respect to the dismissed claims asserted against Defendant Kastanis under the Eight

---

[2] The first amended complaint identified the first John Doe Defendant as "Ofc. Kemp." [D.E. 7].

Amendment, the RA, and the American with Disabilities Act ("ADA"), the Court held Plaintiff failed to allege personal involvement, directly or in a supervisory capacity. [*Id.* ¶ 8].

On February 19, 2021, Plaintiff filed a second amended complaint in which he re-asserted the previously permitted claims against the John Doe Defendants and Defendant Lynch, pressed an ADA claim against the New Jersey Department of Corrections ("NJDOC"),[3] and attempted to re-assert his deliberate indifference claims against Defendants Hicks and White (in place of Defendant Kastanis).[4] [D.E. 11]. On April 15, 2021, the Court screened the second amended complaint, permitted the ADA claims to proceed against the NJDOC and the deliberate indifference claims against the three John Doe Defendants and Defendant Lynch,[5] and dismissed the remaining claims without prejudice.[6] [D.E. 12].

On September 27, 2021, the NJDOC and Defendant Hicks (collectively the "State Defendants") filed a Rule 12(b)(6) motion to dismiss. [D.E. 22]. On January 5, 2022, the District Court granted in part and denied in part the motion as follows: (i) denying the motion to dismiss the ADA claim against the NJDOC because sovereign immunity was not available; (ii) denying, as moot, the request for dismissal of the remaining ADA or RA claims; (iii) dismissing, without prejudice, the deliberate indifference claims under the New Jersey Civil

---

[3] The ADA claims were construed as being asserted against the NJDOC because claims asserted against state officials in their official capacity should be treated as against the state. [D.E. 12 at 6 n. 4].

[4] The second amended complaint was construed as also re-asserting the dismissed ADA and RA claims.

[5] The District Court made clear that the deliberate indifference claims against these Defendants would proceed "based solely on Defendants' either refusal to comply with wheelchair only transport status or refusal to order such status for further medical treatment." [D.E. 12 at 4 n. 1 (holding that any such claim "premised on poor driving or the like fails to state a deliberate indifference claim")].

[6] The District Court dismissed the deliberate indifference claims against Defendants Hicks and White for the same reasons stated in the September 15 and January 25 Orders. [D.E. 12 ¶¶ 9-12]. It also dismissed Plaintiff's RA claims for the same reasons stated in the January 25 Order and further dismissed such claim against the NJDOC because Plaintiff failed to allege that it receives federal assistance. [*Id.* ¶ 13].

3

Rights Act ("NJCRA") against Defendant Hicks in his individual capacity for failure to state a claim of supervisory liability; (iv) dismissing, with prejudice, the NJCRA deliberate indifference claims for monetary damages against Defendant Hicks in his official capacity because he is not a person amenable to suit under the NJCRA. [D.E. 27 at 4-6].

After the remaining Defendants filed answers to the second amended complaint, on August 19, 2022, the Court issued a Pretrial Scheduling Order, which set March 17, 2023 and July 2, 2023 deadlines to complete fact and expert discovery, respectively, and a January 13, 2023 deadline to move to amend pleadings.[7] [D.E. 46].

On May 15, 2023, Plaintiff filed this motion to amend and supplement.[8] [D.E. 63]. First, he seeks to identify "Ofc. Kemp" as "Justin Kemps" ("Kemps"), who was previously identified as the first John Doe Defendant, and to name the second John Doe Defendant as "Thomas Meades" ("Meades"). [*Id.* at 1, 3, 7]. Second, Plaintiff proposes the filing of a third amended complaint that re-asserts previously permitted and dismissed claims.[9] [*Id.* at 3-13]. Third, he requests leave to supplement the complaint by asserting deliberate indifference, ADA, and RA claims against new parties—*i.e.*, "Rutgers, The State University of New Jersey

---

[7] To date, no party has requested an extension of any of those deadlines.

[8] Plaintiff filed a motion for leave to supplement the second amended complaint on March 10, 2023 [D.E. 56], which this Court construed as a motion to amend [D.E. 59]. Because Plaintiff later filed this motion to amend, the Court terminated the previous motion as moot. [D.E. 65]. However, Plaintiff's motion is procedurally defective because it fails to comply with Local Civil Rule 15.1 and this Court's Civil Case Management Order, which require the filing of a black- or red-lined version of the proposed pleading. In light of Plaintiff's *pro se* status, the Court will excuse this failure. *See Dunne v. Twp. of Springfield*, Civ. No. 08-5605, 2011 WL 2269963, at *14 (D.N.J. Jan. 31, 2011), *aff'd*, 500 F. App'x 136 (3d Cir. 2012) ("Courts generally will relax pleading requirements for *pro se* litigants …."); *see also Naderi v. Concentra Health Servs., Inc.*, Civ. No. 21-18958, 2023 WL 4896773, at *2 (D.N.J. Aug. 1, 2023) (collecting cases relaxing Local Civil Rules in *pro se* matters).

[9] In the proposed amended complaint, Plaintiff states he "has included matters this Court has dismissed" for the purpose of preserving "issues" for appellate review. [D.E. 63 at 4].

4

via its University Correctional Health Care" ("Rutgers UCHC") and "Dr. Swarnalatha Asokan" ("Dr. Asokan"), a physician who treated Plaintiff in prison—based on the alleged denial of medical care, including "proper" medical transportation, with respect to medical symptoms he began experiencing in 2022, after filing this action. [*Id.* at 14-19].

On June 6, 2023, the remaining Defendants filed opposition to Plaintiff's motion. [D.E. 67, 68]. Defendant Lynch argues the motion should be denied because (i) the new proposed claims against Dr. Asokan and Rutgers UCHC are futile, and (ii) Plaintiff failed to satisfy his burden of showing he diligently sought the proposed amendment. [D.E. 67 at 7-12]. The State Defendants also argue the proposed claims asserted against NJDOC are futile. [D.E. 68 at 8-14]. None of these parties expressly opposed Plaintiff's proposed amendment to name Kemps and Meades in place of the John Doe Defendants. [*See generally* D.E. 67, 68].

## II.   DISCUSSION

As Plaintiff seeks to amend and supplement the operative complaint, both Rules 15(a)(2) and 15(d) apply. Motions to amend pleadings are generally governed by the liberal standard of Rule 15(a)(2), which provides that "[t]he court should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). In turn, Rule 15(d), which governs motions to supplement pleadings, states that, "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the [operative] pleading." Fed. R. Civ. P. 15(d); *see also Planker v. Christie*, Civ. No. 13-4464, 2018 WL 4639197, at *3 (D.N.J. Sept. 27, 2018) ("The purpose of Rule 15(d) is to promote as complete an adjudication of the dispute between the parties as possible by allowing the addition of claims which arise

after the initial pleadings are filed." (quotation marks and citations omitted)). However, when such motions are filed after the deadline set by a scheduling order, they are subject not only to Rule 15 but also to the more stringent standard of Rule 16(b)(4), under which a party must demonstrate "good cause" exists to modify the Court's scheduling order and that it has acted with reasonable diligence despite the failure to comply with that order. Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *see also Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010) ("Rule 16(b)(4) focuses on the moving party's burden to show due diligence."). If good cause and diligence are demonstrated, the Court then proceeds to analyze the motion under Rule 15.

    A.    <u>Good Cause under Rule 16(b)(4)</u>

Good cause to bring a late motion to amend turns on the movant's diligence; thus, the Court considers whether Plaintiff "possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary" to file the motion before the deadline. *See Fermin v. Toyota Material Handling, U.S.A., Inc.*, Civ. No. 10-3755, 2012 WL 1393074, at *3 (D.N.J. Apr. 23, 2012) (citations omitted). Here, Plaintiff first sought leave to supplement the complaint with the new allegations and claims on March 10, 2023 [D.E. 56], and to formally name Kemps and Meades as the first two John Doe Defendants on May 15, 2023 [D.E. 63]. Plaintiff did not seek this relief before the expiration of the January 13, 2023 deadline to move to amend pleadings. [D.E. 46]. However, whether Plaintiff exercised sufficient diligence in seeking the proposed amendment requires more than merely comparing the Court's scheduling order to the dates of his requests to amend. Considering the facts and law in light of Plaintiff's *pro se* status, the outcome is a close call.

Defendant Lynch asserts Plaintiff has "offered no justification for the delay and/or failure to amend sooner." [D.E. 67 at 12]. Specifically, because the proposed new claims appear to have arisen on December 6, 2022, on the date when Plaintiff was allegedly not provided "medical transport" to an appointment [D.E. 63 at 17], Plaintiff could have but failed to seek leave to amend or supplement before the January 13, 2023 deadline. Similarly, Plaintiff does not state when he obtained sufficient information—in discovery or otherwise—to name Kemps and Meades. Thus, Plaintiff's conduct appears to fall short of meeting the standard necessary to satisfy his burden under Rule 16(b)(4).

However, as Plaintiff moved for this relief just a few months after the deadline, and considering his *pro se* status, the Court cannot conclude that Plaintiff's conduct was dilatory or lacked the requisite diligence required to meet the Rule 16(b)(4) standard. In the interest of addressing the motion on the merits under Rule 15, in accordance with the Third Circuit's expressed preference "that cases be disposed of on the merits whenever practicable," *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 2004), the Court will exercise its discretion, in this instance, to relax the deadline for filing motions to amend.

B.     <u>Leave to Amend or Supplement under Rule 15</u>

The standard under Rule 15(d) is "essentially the same as that under Rule 15(a)." *Strenger v. Miner*, Civ. No. 17-3332, 2021 WL 1207474, at *4 (D.N.J. Mar. 31, 2021) (quotation marks and citations omitted). While Rule 15(a)(2) provides that leave to amend should be freely granted, it is well established that courts retain discretion to deny such leave for equitable reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies …, undue prejudice to the opposing party …,

7

[and/or] futility of amendment ….」 *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) ("[P]rejudice to the non-moving party is the 'touchstone for the denial of an amendment.'" (citation omitted)). In the case of a motion to supplement, leave "should be granted 'if it will promote the just disposition of the case, will not cause undue prejudice or delay and will not prejudice the rights of any parties.'" *Planker*, 2018 WL 4639197, at *3 (citation omitted). Such a motion may also be denied "where the proposed amendment or pleading is futile." *Bd. of Trustees of Nat'l. Elevator Indus. Health Ben. Plan v. McLaughlin*, Civ. No. 12-4322, 2013 WL 4788190, at *4 (D.N.J. Sept. 6, 2013) (citation omitted). As in the case of a motion to amend, the decision is ultimately "left to the sound discretion of the court." *Planker*, 2018 WL 4639197, at *3 (citation omitted).

Here, while the opposition focuses on the futility of the proposed amendment, Defendant Lynch argues it should also be denied on grounds of undue delay and prejudice. [D.E. 67 at 11-12]. Undue delay, as a basis for denial, focuses on whether the party seeking leave has inexplicably failed to take advantage of previous opportunities to amend, resulting in unfair burdens to the Court and the opposing party. *Arthur*, 434 F.3d at 204 (citations omitted); *see also Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017) (stating delay is "undue" if it is "protracted and unjustified" and "can place a burden on the court or counterparty" or "indicate a lack of [sufficient] diligence"). The mere passage of time is insufficient. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). Undue prejudice focuses on whether the non-moving party will face hardship if the amendment is permitted. *Id.* Examples include situations where the proposed amendment will "require the opponent to expend significant additional resources to conduct discovery and prepare for trial" or will

"significantly delay the resolution of the dispute." *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004); *Cureton*, 252 F.3d at 273 (considering "whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories").

While Plaintiff could have likely filed the motion earlier, granting his application is unlikely to result in unfair burdens to the Court or Defendants, particularly as discovery formally commenced just over a year ago, and a trial date has not been set. Further, even if additional discovery were required, it does not appear that such discovery will so expand the scope of this action as to unduly prejudice Defendants, especially since the proposed amendment will be granted only to permit Plaintiff to name Kemps and Meades in place of the first two John Doe Defendants. *See Diebler v. SanMedica Int'l, LLC*, Civ. No. 19-20155, 2021 WL 5013617, at *4 (D.N.J. Oct. 28, 2021), *aff'd*, 2022 WL 16552777 (D.N.J. Oct. 31, 2022) ("[T]he expenditure of time, money, and effort alone is not grounds for a finding of prejudice." (citations and quotation marks omitted)). Moreover, the Court finds that granting Plaintiff's application will not "impair the [Defendants'] 'ability to present [their] case.'" *Id.*

Finally, futility, in the context of a Rule 15 motion, "means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). In assessing futility, the Court "applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* As noted earlier, it appears Plaintiff seeks to re-assert dismissed claims and to assert new deliberate indifference, ADA, and RA claims against the new proposed parties. As an initial matter, this Court need not address the sufficiency of the claims the District Court already screened and permitted to proceed—*i.e.*, the ADA claims against the NJDOC and the deliberate indifference

9

claims against the John Doe Defendants and Defendant Lynch. In connection with those claims, Plaintiff seeks to name Kemps and Meades as party defendants in place of the John Doe Defendants. Defendants do not expressly oppose such proposed amendment based on futility, and based on the current record, the Court cannot assess whether such proposed amendment is clearly futile.[10] Moreover, to the extent Plaintiff seeks to re-assert previously dismissed claims, such proposal is futile because he does not allege new facts that address or correct the deficiencies previously noted by the District Court.[11]

Finally, the Court concludes the proposed supplement to the second amended complaint, including the new allegations and claims against Dr. Asokan and Rutgers UCHC, is also futile. Plaintiff seeks to hold Dr. Asokan liable for "deliberate indifference" of his medical needs and for denying proper medical transport, solely based on the allegation that she treated Plaintiff on or about October 12, 2022. [D.E. 63 at 15-16]. Plaintiffs seeks to hold Rutgers UCHC similarly liable for the "acts and actions of its employees." [*Id.* at 15].

The proposed claims against Dr. Asokan are legally insufficient because Plaintiff fails to allege Dr. Asokan's personal involvement in his medical treatment, transport, or the like. *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (stating that personal involvement in the alleged wrongs is a required element of a claim under section 1983 (citation omitted)). Plaintiff fails to allege (i) any facts supporting the claim that Dr. Asokan was

---

[10] In granting Plaintiff leave to amend the second amended complaint to name Kemps and Meades, this Court does not opine on whether the amendment relates back to the date of the earlier pleadings. To the extent Defendants Kemps and Meades believe Plaintiff's claims against them fail, they shall have an opportunity to seek their dismissal in due course and as provided by the Rules.

[11] The NJDOC's futility arguments are moot because Plaintiff does not seek to assert new claims against the NJDOC. The District Court has addressed the viability of such claims in prior Orders.

deliberately indifferent to his medical needs, and (ii) that Dr. Asokan had any role or responsibility for determining his medical transportation. *Cf. id.* ("A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct."). While *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints," *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted), and Plaintiff's supplemental allegations do not "allow[] the [C]ourt to draw the reasonable inference that [Dr. Asokan] is liable for [the] misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (stating that there "mere possibility of misconduct" is insufficient to plausibly allege a claim); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, … a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions …. (citations omitted)).[12]

       The proposed claims against Rutgers UCHC are similarly futile. Those claims rest solely on a theory of vicarious liability. However, Rutgers UCHC "cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003) (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Instead, to state a civil rights claim against Rutgers UCHC, Plaintiff must have alleged the existence of a relevant policy or custom that caused the alleged violations. *Id.* However, Plaintiff fails to allege the existence of any

---

[12] To the extent Plaintiff seeks to assert a RA claim against Dr. Asokan, such claim is legally insufficient for the same reasons stated in the District Court's September 15 Order: individual liability is not contemplated under section 504 of the RA. [D.E. 4 ¶ 8 (citation and quotation marks omitted)].

such policy or custom held by Rutgers UCHC or sufficient facts that would create a reasonable inference that Rutgers UCHC could be responsible for such a policy or custom.[13]

### III.   CONCLUSION AND ORDER

For the foregoing reasons, the Court finds, in its discretion, that the relief sought in the motion for leave to amend and supplement is warranted only in part. Accordingly,

**IT IS** on this 22nd day of November, 2023,

**ORDERED** that Plaintiff's motion for leave to amend and supplement the second amended complaint [D.E. 63] is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that no later than **December 29, 2023**, Plaintiff shall file a third amended complaint consistent with the Court's rulings herein. For the avoidance of doubt, the third amended complaint shall identify Defendants Kemps and Meades in place of the first two John Doe Defendants and shall expressly exclude the proposed supplement and all other claims previously dismissed by the District Court. The only claims that shall proceed in the litigation shall consist of the ADA claims against the NJDOC and the deliberate indifference claims against Defendant Lynch, Kemps, Meades, and the third John Doe Defendant; and

**ORDERED** that **within twenty-one days** of Plaintiff filing the third amended complaint, Defendant Lynch and the State Defendants shall respond to the third amended complaint as provided by the Rules; and it is further

**ORDERED** that no later than **January 22, 2024**, the parties shall file a joint letter setting forth the status of this matter and stating whether any additional discovery is necessary;

---

[13] Importantly, despite the District Court previously noting the deficiency, Plaintiff again fails to allege that Rutgers UCHC "provide[d] services to the prison in which [he] is detained." [D.E. 8 ¶ 8 n. 2].

and it is further

**ORDERED** that the Clerk of Court shall mail to Plaintiff—at the address listed on the docket by regular U.S. mail[14]—(i) a copy of this Order, and (ii) a transmittal letter explaining the procedure for completing a USM-285 Form; and it is further

**ORDERED** that **within fourteen days** of receiving the transmittal letter, Plaintiff shall complete USM-285 Forms for Defendant Kemps and Meades and return them to the Office of the Clerk of Court, Martin Luther King Building & U.S. Courthouse, 50 Walnut Street, Newark, NJ 07102; and it is further

**ORDERED** that upon receiving the completed USM-285 Form, the Clerk of Court shall add Defendants Justin Kemps and Thomas Meades to the caption of this matter, in place of John Doe #1 and #2, respectively, and issue the appropriate summons; and it is further

**ORDERED** that upon the issuance of the summons, the United States Marshals Service shall serve a copy of the filed third amended complaint, summons, and this Order upon Defendants Justin Kemps and Thomas Meades pursuant to 28 U.S.C. § 1915(d), with all costs of services advanced by the United States; and it is further

**ORDERED** that Defendants Justin Kemps and Thomas Meades shall file and serve a responsive pleading within the time specified in Rule 12; and it is further

**ORDERED** that the Clerk of Court shall terminate the motion at D.E. 63.

>       /s/ *André M Espinosa*
>       ANDRÉ M. ESPINOSA
>       United States Magistrate Judge

---

[14] This address was provided by Plaintiff as his mailing address. While Plaintiff appears to suggest he has not received certain correspondence from the Court [*see* D.E. 69], the Court notes there has been no docket entry reflecting that any mailing has been returned to this District's Office of the Clerk of Court.