# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SHAROB ABDUL-AZIZ,** | **Civil Action No. 20-10265 (SDW-AME)** |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **BARRINGTON LYNCH, et al.,** | |
| **Defendants.** | |

**WIGENTON**, District Judge:

Presently before this Court is the motion for summary judgment ("Motion") filed by Defendants Justin Kemps, Thomas Meades, and the New Jersey Department of Corrections ("DOC"). (ECF No. 135). *Pro se* Plaintiff Sharob Abdul-Aziz opposes the Motion. (ECF No. 142). This Court will determine the motions on the briefs pursuant to Federal Rule of Civil Procedure 78(b). For the following reasons, the Motion will be granted and the case will be closed.

## I. FACTS AND PROCEDURAL HISTORY

### A. Undisputed Facts[1]

Plaintiff is a convicted and sentenced prisoner who was confined in East Jersey State Prison ("EJSP") on August 6, 2019 and August 7, 2019. (Defendants' Statement of Undisputed Material Facts ("DSOF"), ECF No. 135-2 ¶ 2). DOC's Central Transportation Unit ("CTU") is responsible

---

[1] Plaintiff's opposition did not include "a responsive statement of material facts, addressing each paragraph of the movant's statement" required by Local Civil Rule 56.1(a). (*See* Plaintiff's Statement of Disputed Facts ("PSOF") (ECF No. 142 at 6-8)). His Statement of Disputed Facts are primarily legal conclusions. (*Id.*) Therefore, this Court considers Defendants' statements of material facts to be "undisputed for purposes of the summary judgment motion." L. Civ. R. 56.1(a).

for transporting prisoners to and from DOC facilities.  (*Id.* ¶ 1).  Prior to any transportation, medical personnel make the decision if a wheelchair accessible van is required for transportation and tell the CTU.  (*Id.*)  The medical personnel are not DOC employees.  (*Id.*)

After hearing from the medical personnel, "the CTU then indicates such status on its transportation log next to the incarcerated person's name, for instance by indicating 'H/C', meaning 'handicapped.'"  (*Id.*)  "It is the responsibility of the DOC's transportation officers to transport the inmate in accordance with the contracted medical personnel's determination, *i.e.*, in a wheelchair accessible van if so determined by the medical staff, or otherwise in a standard [non-medical] van."  (*Id.*)

Plaintiff was approved for transportation to St. Francis Medical Center ("St. Francis") in a wheelchair accessible van on August 6, 2019.  (*Id.*)  The DOC's activity logs for that day reflect "plaintiff's name and the designation 'H/C', meaning 'handicapped', under the heading 'SFMC SAC ADM FOR 8/7/19.'"  (*Id.*)  "'SFMC' means 'Saint Francis Medical Center', 'SAC' means 'Same Day Ambulatory Care' and 'ADM' means 'Admission.'"  (*Id.*)  "Plaintiff's name below that heading means that plaintiff was to be transported on August 6, 2019 for a procedure at St. Francis that would occur on August 7, 2019 because plaintiff would need to be prepared by the St. Francis medical staff for his procedure earlier than he could be transported to St. Francis on August 7, 2019."  (*Id.*)

The DOC's activity log for August 7, 2019 does not contain the "H/C" designation next to plaintiff's name.  (*Id.* ¶ 3).  "That St. Francis personnel (and the contracted medical personnel at EJSP) did not approve the use of a wheelchair accessible van for plaintiff for his return trip is confirmed by the August 7, 2019 email from the DOC's Central Medical Unit ('CMU') to other DOC personnel, in which CMU stated that '[p]er Saint Francis Medical Center Staff Inmate Abdul-

Aziz, Sharob … is cleared for discharge to EJSP via Normal Transportation.'" (*Id.*) (omission and alteration in original). The portion of the transportation papers regarding plaintiff's transport back to EJSP "indicated that transportation officers other than Officers Kemps and Meades transported plaintiff from St. Francis to EJSP on August 7, 2019." (*Id.* ¶ 4). According to Defendants, Kemps and Meades were listed on the papers as being the transport officers for other prisoners. (*Id.*)

### B. Plaintiff's Disputed Facts

Plaintiff asserts he has "chronic deteriorating spine impairment and Renal conditions … ." (PSOF ¶ 6 (emphasis omitted)). He states that he was approved for medical transportation because of these conditions. (*Id.* ¶ 6(B)). He was approved for medical transportation to the Spine and Back Clinic on November 26, 2019 but the wheelchair accessible van did not arrive, leaving Plaintiff with a non-medical DOC van.[2] (*Id.* ¶¶ 6(C)-(D)). According to Plaintiff, Kemps and Meades "altered or ignored" Plaintiff's designation and used non-medical transportation on August 7, 2019, causing Plaintiff's injury. (*Id.* ¶ 6(E)).

### C. Procedural History

Plaintiff initiated this action on August 10, 2020 by filing a *pro se* prisoner civil rights complaint. (ECF No. 1). Plaintiff asserted that he had been in an accident on August 7, 2019 while he was being transported back to EJSP after his surgery at Saint Francis. (*Id.* at 5). Plaintiff asserted he was being transported in a non-medical DOC van instead of a wheelchair-accessible van and that his lower back was injured because of the accident. (*Id.* at 6-7). On September 15, 2020, this Court screened that complaint and permitted Plaintiff's Eighth Amendment deliberate indifference medical claims under 42 U.S.C. § 1983 to proceed against three John Doe Defendants.

---

[2] Plaintiff refers to this type of van as a "dog cage" van. (PSOF ¶ 6(C)-(D)). This Court will refer to it as the "non-medical" van.

(ECF No. 4).  Claims against Marcus Hicks, the acting DOC Commissioner at the time; John N. Kastanis, purportedly the CEO of Rutgers Medical School; and Lynch were dismissed without prejudice.  (*Id.* at 7).

Plaintiff filed an amended complaint on October 5, 2020.  (ECF No. 7).  This Court allowed Plaintiff's Eighth Amendment claims against Lynch to proceed.  (ECF No. 8 at 5-7).  Plaintiff filed a second amended complaint on February 19, 2021.  (ECF No. 11).  He continued to raise his previously proceeded claims against the John Doe Defendants and Lynch, and attempted to raise an American with Disabilities Act ("ADA") claim against the DOC and deliberate indifference claims against Hicks and the current COO for Rutgers University Correctional Healthcare.  (*Id.*)  As it had before, this Court permitted the claims against the John Doe Defendants and Lynch to proceed.  (ECF No. 12 at 4).  It dismissed the deliberate indifference claims against Hicks and the Rutgers COO.  (*Id.*)  This Court permitted Plaintiff to add an ADA claim against the DOC.  (ECF No. 12 at 7).

The DOC and Hicks moved to dismiss the amended complaint on September 27, 2021. (ECF No. 22).[3]  This Court granted the motion in part and denied the motion in part on January 5, 2022.  (ECF Nos. 27, 28).  Any remaining claims against Hicks were dismissed, but the ADA claim against the DOC was allowed to continue.  (ECF No. 28).  The Clerk entered default against defendant Lynch on January 19, 2022, (ECF No. 30), and Plaintiff moved for a default judgment on February 7, 2022, (ECF No. 33).  Lynch filed a cross-motion to vacate the default on March 9, 2022.  (ECF No. 37).  This Court granted Lynch's motion and vacated the entry of default on June 24, 2022.  (ECF No. 42).

---

[3] Defendants did not acknowledge that the claims against Hicks had been dismissed when this Court screened the second amended complaint.

On September 26, 2023, Plaintiff filed a motion for a temporary restraining order and preliminary injunction seeking medical treatment, DOC medical transportation for neurosurgery and urological consultations, and restoration of his single cell medical housing status. (ECF No. 70). This Court denied that motion. (ECF No. 84).

On November 22, 2023, the Honorable Andre M. Espinosa, United States Magistrate Judge, permitted Plaintiff to file his Third Amended Complaint ("TAC"). (ECF No. 81). Plaintiff filed the TAC on December 12, 2023, adding the allegedly responsible DOC transportation officers, Justin Kemps and Thomas Meades, as defendants. (ECF No. 82).

This Court granted defendant Lynch's motion for summary judgment on November 13, 2025. (ECF No. 156). Accordingly, the Eighth Amendment claims against Kemps and Meades and the ADA claim against the DOC are the only remaining claims.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it "might affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party has the initial burden of showing the basis for its motion and that there is no genuine dispute of material fact. *See Celotex Corp.*, 477 U.S. at 323. The moving party must cite specific materials in the record. Fed. R. Civ. P. 56(c)(1)(A). "[T]he burden on the

moving party may be discharged by 'showing' … that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325.  Once the moving party has satisfied its burden, the non-moving party, "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257.  "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." *Hugh v. Butler Cnty. Fam. YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citing *Anderson*, 477 U.S. at 251).  The moving party is entitled to judgment as a matter of law when the non-moving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp.*, 477 U.S. at 323.

## III. DISCUSSION

### A.  Eighth Amendment

Plaintiff claims in the TAC that Defendants Kemps and Meades ignored his serious medical needs in violation of the Eighth Amendment when they did not use a wheelchair-accessible van to transport Plaintiff back to EJSP after his surgery.  (TAC ¶¶ 18-20).  "The Eighth Amendment, through its prohibition on cruel and unusual punishment, prohibits the imposition of 'unnecessary and wanton infliction of pain contrary to contemporary standards of decency.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)).  "In order to sustain this constitutional claim under 42 U.S.C. § 1983, a plaintiff must make (1) a subjective showing that the defendants were deliberately indifferent to his medical needs and (2) an objective showing that those needs were serious." *Id.* (cleaned up).  In other words, "to defeat the summary judgment motion, [Plaintiff] must present enough evidence to support the inference that the defendants 'knowingly and unreasonably disregarded an objectively

intolerable risk of harm.'" *Beers-Capitol v. Whetzel*, 256 F.3d 120, 132 (3d Cir. 2001). The Third Circuit has found deliberate indifference "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Parkell v. Danberg*, 833 F.3d 313, 337 (3d Cir. 2016) (internal citations omitted).

Defendants Kemps and Meades are DOC transport officers; they are not medical professionals. "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official … will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). Defendants have presented evidence that although the CTU is responsible for transporting prisoners to and from DOC facilities, non-DOC medical personnel decide if a wheelchair accessible van is required for transportation. "It is the responsibility of the contracted medical personnel at EJSP to determine whether a given inmate is eligible and qualified for wheelchair accessible van status, *i.e.*, whether it is medically necessary and appropriate for the inmate to be transported in a wheelchair accessible van as opposed to a standard [non-medical] van." (Certification of CTU Lieutenant Brian Patoe, ECF No. 135-6 ("Patoe Cert.") ¶ 2); (*see also* Declaration of Edward H. Haas, Esq., M.S.W., ECF No. 77-1 ("Haas Dec.") ¶ 9).[4] "It is the responsibility of the DOC's transportation officers to transport the inmate in accordance with the contracted medical personnel's determination, *i.e.*, in a wheelchair

---

[4] This Court may consider the Haas Declaration, submitted as part of a previous motion, pursuant to Federal Rule of Civil Procedure 56(c)(3).

accessible van if so determined by the medical staff, or otherwise in a standard [non-medical] van." (Patoe Cert. ¶ 2)

The DOC's activity log for August 6, 2019 reflects that Plaintiff was approved for transportation to St. Francis in a wheelchair accessible van. (*Id.* ¶ 3; ECF No. 138 at 7). Plaintiff was transported to St. Francis in accordance with this direction, although he was not in a wheelchair. (ECF No. 135-5 at 11). The log further reflects that he was not approved for a wheelchair accessible van for the August 7, 2019 return trip. (Patoe Cert. ¶ 4; ECF No. 138 at 9).

Whether Kemps and Meades drove the van on August 7, 2019 is a disputed fact. However, this dispute does not preclude summary judgment because Plaintiff has not submitted evidence that would permit a reasonable jury to conclude that Kemp and Meades were deliberately indifferent to his medical needs. There is no evidence that a medical professional ordered Plaintiff to be transported in a wheelchair accessible van on August 7, 2019, but there is evidence that medical professionals approved transportation in a non-medical van. Kemps and Meades did not participate in the medical decisions made regarding Plaintiff's transportation, and they were justified in relying on the judgment of the medical professionals who did make that decision. *See Estien v. Showalter*, 723 F. App'x 93, 97 (3d Cir. 2018) (affirming grant of summary judgment to non-medical professional who "scheduled appointments only at the direction of prison medical staff"). There is also no evidence that Kemps and Meades had the authority to overrule a transportation decision made by a medical professional. Therefore, this Court will award summary judgment to Kemps and Meades on Plaintiff's Eighth Amendment claim against them.

### B. Americans with Disabilities Act

Plaintiff's final argument is a claim pursuant to Title II of the ADA for failure to accommodate his disability. Under Title II of the ADA, "no qualified individual with a disability

shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Plaintiff argues that DOC's failure to accommodate his disability by requiring CTU to use a wheelchair accessible van to transport him denied him the "benefits of Medical Services … based on his need of Medical Transportation." (ECF No. 142 at 4). He states non-disabled inmates were able "to access to those same medical services, due to their ability to use regular DOC transportation." (*Id.* (emphasis omitted)).

"To establish a violation of Title II, Plaintiff must allege: '(1) that he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability.'" *Owens v. Armstrong*, 171 F. Supp. 3d 316, 328 (D.N.J. 2016) (quoting *Dahl v. Johnston*, 598 F. App'x 818, 819-20 (3d Cir. 2015)); *see also Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 553 n.32 (3d Cir. 2007). "State prisons fall squarely within the statutory definition of 'public entity,' which includes 'any department, agency, special purpose district, or other instrumentality of a State or States or local government.'" *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) (quoting 42 U.S.C. § 12131(1)(B)). "[T]he phrase 'service, program, or activity' under Title II … is 'extremely broad in scope and includes anything a public entity does.'" *Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 289 (3d Cir. 2019) (quoting *Disability Rights N.J., Inc. v. Comm'r, N.J. Dep't of Human Servs.*, 796 F.3d 293, 301 (3d Cir. 2015)). A prison's transportation system and medical services fall within this definition. "Under Title II, the failure of a public entity to provide disabled persons with

reasonable modifications constitutes discrimination within the meaning of the [ADA]." *Muhammad v. Dep't of Corr.*, 645 F. Supp. 2d 299, 313 (D.N.J. 2008).

Assuming for summary judgment purposes that Plaintiff has a disability within the meaning of the ADA, Plaintiff has not shown that he was denied access to either the prison's transportation system or outside medical services because of his disability. Plaintiff testified that he rode in the non-medical van for the first time in either 2012 or 2014 when he was transferred to EJSP from New Jersey State Prison. (ECF No. 135-5 at 8-9). He also testified he rode in a non-medical van on a return trip from the hospital at least once before August 7, 2019. (*Id.* at 9). He admitted that sometimes he has pain sitting on cushioned surfaces as well as hard surfaces. (*Id.* at 18, 20). He does not use any type of a mobility-aid and can run if necessary. (*Id.* at 19). Plaintiff testified that he was "bloody" after one trip in the non-medical van[5] and told officials that he was "not doing that again." (*Id.* at 21). However, he never told a doctor that he "should only be in a medical transport van," (*id.*), and no doctor ever told him that "riding in those [non-medical] vans was going to make" his medical conditions worse, (*id.* at 23). Plaintiff testified in a second deposition that he is able to walk to weekly religious services and bend in prayer. (*Id.* at 65).

"[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). Plaintiff points to a September 12, 2024 medical report stating that he is to be transported in a wheelchair accessible van as evidence. (ECF No. 142 at 8, 32). However, evidence that Plaintiff was authorized to travel in a wheelchair accessible

---

[5] Plaintiff was unable to state the date of this trip with certainty, stating it could have been "2000 … might have been 2016 or something like that." (ECF No. 135-5 at 21).

van in 2024 does not support a finding that Defendants violated the ADA in 2019.[6] He also submits

letters and newsletters from a policy organization about the alleged hazards of the non-medical

vans, but these have little relevance to Plaintiff's claims because they were written for the purpose

of advocating for a change to DOC transportation policy and do not engage with the facts of

Plaintiff's claims.[7]  (*Id.* at 9-23; ECF No. 143).

Additionally, DOC ADA Coordinator Haas declared that there are only a small

number of wheelchair accessible vans available.  (Haas Dec. ¶ 10).  "Due to the small number

of these specially designed wheelchair accessible vans, the [DOC] reserves their use for

individuals who, due to their medical condition, require transportation in these wheelchair

accessible vans."  (*Id.* ¶ 11).  There is evidence that Plaintiff was approved to use a wheelchair

accessible van on November 26, 2019, (ECF No. 142 at 28),[8] but approval to ride in a wheelchair

accessible van on any given day is not the same as a *requirement* that Plaintiff travel in a

wheelchair accessible van.  *Compare with Ramirez v. SWSP Custody Officers*, No. 20-cv-3887,

2023 WL 2523693, at *7 (D.N.J. Mar. 15, 2023) (denying summary judgment for Title II claim

that prison placed prisoner with a medical alert for "NEED FOR WHEEL CHAIR OR

OTHER DEVICE" and "WHEELCHAIR –

---

[6] This Court disagrees with Defendants' assertion that Plaintiff's ADA claims only concern his August 7, 2019 transportation.  (*See* ECF No. 149 at 14).  The TAC also alleges that Defendants did not provide a wheelchair accessible van on November 26, 2019, thereby denying Plaintiff access to outside medical treatment.  (TAC ¶ 33).

[7] This Court notes that Plaintiff's case is referred to in the document, but it is just a recitation of Plaintiff's allegations.  (ECF No. 142 at 18).  The document states that the information "was gathered from a lawsuit brief [the organization] received in the mail."  (*Id.*)

[8] As this Court noted in its prior opinion granting Defendant Lynch's motion for summary judgment, Plaintiff could not say for sure who was responsible for the lack of a wheelchair accessible van on November 26, 2019. (ECF No. 155 at 7; *see also* ECF No. 133-5 at 14-15).  This inability to identify a responsible person required dismissal of Plaintiff's Eighth Amendment claim.  (ECF No. 155 at 7 (citing *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 291 (3d Cir. 2018)).

PERMANENT," in a cell without handrails or an accessible toilet). There is no evidence in the record that a medical professional concluded that Plaintiff had to be restricted to a wheelchair accessible van, and Plaintiff has not provided any evidence to show that anything besides his own decisions have prevented him from attending outside appointments. (*See* ECF No. 84 at 9 (denying Plaintiff's motion for a Temporary Restraining Order and Preliminary Injunction)).

In conclusion, even if a jury believes Plaintiff's deposition testimony, he has not submitted enough evidence, *i.e.*, beyond a scintilla, for a reasonable jury to conclude that he was denied a service or program because of his disability. (*See* ECF No. 142 at 8 (arguing "res ipsa loquitur, this thing speaks for itself.") Defendants are therefore entitled to summary judgment.

## IV. CONCLUSION

For the reasons stated above, this Court will grant the Motion. Summary judgment is granted to Defendants. An appropriate order follows.

Date:_____December 11_____, 2025

_____
Hon. Susan D. Wigenton
United States District Judge